IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA TUULAUPUA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 14-1121 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2015, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications for disability insurance benefits and supplemental security income on January 5, 2011, and January 19, 2011, respectively, alleging a disability onset date of July 25, 2010, due to panic attacks, anxiety, depression and post-traumatic stress disorder (PTSD). Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on July 27, 2012. After being informed of her right to representation, plaintiff chose to proceed and testify without the assistance of an attorney or other representative. On November 28, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On June 24, 2014, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 27 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). She has at least a high school education and has past relevant work experience as a barista, bakery clerk, bakery supervisor and waitress, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of PTSD, panic disorder, generalized anxiety disorder and depressive disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform only simple, routine and repetitive tasks while making only simple decisions; she can perform no fast paced work or work that involves changes in work processes, and she must

be isolated from the public and can have only occasional supervision. (R. 22-23). Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including stocker, janitor, and assembler. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform any of her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[1] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

---

[1] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.3d at 432; 20 C.F.R. §§404.1520a and 416.920a.

Here, plaintiff raises three challenges to the ALJ's findings: (1) the ALJ failed to fulfill her duty to an unrepresented claimant to fully develop the record and to assist plaintiff in the presentation of her claim; (2); the ALJ "misrepresented" and improperly analyzed plaintiff's GAF ratings; and, (3) the ALJ misrepresented the record by stating that plaintiff's symptoms were "stable." Upon review, the court is satisfied that the ALJ properly evaluated all of the evidence and that all of her findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ failed to fulfill the heightened duty to develop the record that she owed to plaintiff as an unrepresented claimant.[2] Specifically, plaintiff alleges that the ALJ failed to advise her of the role of the vocational expert and to ask the vocational expert an "accurate" hypothetical accounting for plaintiff's limitations "as she reported them." Upon review, the court is satisfied that the ALJ fulfilled her duty to plaintiff as an unrepresented claimant in this case.

Because Social Security proceedings are inquisitorial, not adversarial, "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103 (2000). Moreover, it long has been established in this circuit that the ALJ has a heightened duty to develop the record and to hold full and fair hearings when a claimant is unrepresented. Livingston v. Califano, 614 F.2d 342 (3d Cir. 1980); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Importantly, however, the mere fact that a claimant is unrepresented by counsel is not alone sufficient for remand, rather, remand is appropriate only where "the lack of counsel prejudiced the claimant or ... the administrative proceeding was marked by unfairness due to lack of counsel." Livingston, 614 F.2d at 345.

---

[2] The record is clear, and plaintiff does not dispute, that she was informed of her statutory right to counsel and that she knowingly, voluntarily and intelligently waived that right. See Vivaritas v. Commissioner of Social Security, 264 Fed. Appx. 155, 157 (3d Cir. 2008);(R. 34-35; 124).

- 4 -

Here, plaintiff is alleging unfairness solely in relation to the ALJ's questioning of the vocational expert. While "a claimant has a right to cross-examine vocational experts as a part of procedural due process," Howe v. Astrue, 2013 WL 593975 * 3 (W.D.Pa., Feb. 14, 2013) (J. Ambrose), "[t]he question is not 'whether every question was asked which might have been asked had the claimant been represented by an attorney, but whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Devault v. Astrue, 2014 WL 3565972 *3 (W.D.Pa., July 18, 2014)(J. Hornak)(*citations omitted*).

Here, the ALJ asked the vocational expert three hypothetical questions incorporating various functional limitations. (R. 49). The second of these hypotheticals reflected the limitations that the ALJ ultimately incorporated into her residual functional capacity finding. (Id.) In response to this hypothetical, the vocational expert indicated that, with those limitations, plaintiff would be able to perform jobs such as assembler, stocker and janitor. (Id.) The third hypothetical incorporated all of the limitations of the second, but added the limitation that the individual would be "off task in addition to regular breaks, 20 percent of the day" due to panic attacks. (Id.) Based on this hypothetical, the vocational expert responded that there would be no jobs that plaintiff could perform. (Id.) The ALJ asked plaintiff if she had any questions for the vocational expert and she responded, "I'm not sure, I'm sorry." (R. 50).

Plaintiff's sole contention here is that the ALJ's third hypothetical over-stated plaintiff's limitations as she reported them, which were that she had panic attacks which "last for about 15 to 25 minutes" and occur "about three times a week." (R. 42). Accordingly, plaintiff avers that "any competent representative" would have asked a hypothetical "which accurately reflect[ed] [plaintiff's] testimony" in regard to her panic attacks, and that the ALJ's failure to do so breached her duty to plaintiff as an unrepresented claimant.

AO 72
(Rev. 8/82)

However, the court can discern no prejudice to plaintiff by the failure of the ALJ to ask a hypothetical reflecting plaintiff's testimony where the ALJ considered that testimony, including that she "still has 3 panic attacks a week," (R. 23), and determined that plaintiff's allegations "are not credible to the extent they are inconsistent with the ... residual functional capacity finding." (R. 24).

Significantly, plaintiff does not challenge explicitly the ALJ's credibility determination in this regard, and the court finds no error in the ALJ's evaluation of plaintiff's subjective allegations of her limitations. As required under the regulations, the ALJ properly considered plaintiff's subjective complaints in light of the medical evidence[3] and all of the other evidence of record, including plaintiff's daily activities (20 C.F.R. §§404.1529(c) and 416.929(c); see also SSR 96-7p) and did a thorough job in her decision explaining why plaintiff's statements concerning "the intensity, persistence and limiting effects of [her] symptoms are not credible" to the extent they conflict with the ALJ's residual functional capacity finding. (R. 23-26).

Thus, because plaintiff's allegations regarding her panic attacks were not supported by the objective medical evidence or other evidence of record, they properly were not included in the ALJ's residual functional capacity finding. And, as a hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record, even had the vocational expert been asked a hypothetical incorporating additional limitations "reflecting plaintiff's testimony," the ALJ would have had the authority to disregard the vocational

---

[3] In regard to plaintiff's allegations of panic attacks 3 times a week lasting 15-25 minutes, the ALJ sets forth medical evidence that is inconsistent with plaintiff's testimony. Specifically, the court noted that as of October 2011, while plaintiff "continued to report some anxiety, especially with stressful life events, ... but she had not had any panic attacks." (R. 25). And as of June 2012, plaintiff "reported a decrease in her panic attacks and overall anxiety ... [s]he was taking less Klonopin and having less intense panic attacks." (R. 25)

expert's response to that hypothetical as not being supported by the medical evidence. *See* Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004).

The court is satisfied that the ALJ's hypothetical to the vocational expert incorporating her residual functional capacity finding sufficiently addressed all of the limitations supported by the record, and that the ALJ's failure to ask the vocational expert an additional hypothetical question incorporating limitations reflecting plaintiff's testimony which were not supported by the record did not prejudice plaintiff or result in any unfairness. This is not a situation where the ALJ failed to ask questions that may have assisted plaintiff's case. *See, e.g.*, McGrew v. Colvin, 2013 WL 2948448 (W.D.Pa., June 14, 2013)(J. Schwab)(remanding case where all of vocational expert's testimony was "in jargon" and additional questioning may have enabled plaintiff to give testimony important to her case). Rather, plaintiff merely is alleging that the ALJ erred in failing to ask a hypothetical question that was not supported by the record. Under these circumstances, the court finds no prejudice or unfairness that would warrant a remand based on an alleged failure to develop the record.

Plaintiff's second argument is that the ALJ improperly evaluated plaintiff's GAF scores.[4] Specifically, plaintiff argues that although the ALJ expressly acknowledged in her decision that plaintiff's GAF ratings "largely hovered between 48 and 50 throughout the relevant time period," (R. 24), the ALJ's "superficial summary" is "incomplete and misleading" because the record also includes several lower scores in the 38-45 range. Plaintiff also alleges that the ALJ failed to treat plaintiff's GAF scores as medical opinions.

---

[4] The Global Assessment of Functioning ("GAF") score considered psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). The latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer includes the GAF scale. *See* Brown v. Colvin, 2013 WL 6039018, at *7 n.3 (E.D. Wash. Nov. 14, 2013) (noting that the GAF scale was dropped from the DSM–5).

AO 72
(Rev. 8/82)

Plaintiff's argument is belied by the record. Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §§404.1527(c) and 416.927(c).

Moreover, courts have emphasized that a claimant's GAF score is not determinative of disability. See Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009)(recognizing that GAF scores do not have a direct correlation to the severity requirements of the Social Security mental disorder listings, and determining that a low GAF score is not conclusive evidence of a mental disability); Wind v. Barnhart, 2005 WL 1317040, *6 n.5 (11th Cir. 2005) (noting that the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs). Accordingly, absent evidence that a GAF score was meant to indicate an impairment of the ability to do work, the score alone is insufficient to establish disability. See Clayton v. Colvin, 2014 WL 5439796 (W.D.Pa., Oct. 24, 2014)(J. Fischer).

The court is satisfied that the ALJ properly evaluated plaintiff's GAF scores in this case. In analyzing the medical evidence, the ALJ acknowledged GAF scores "hovering between 45 and 50[5] throughout the relevant time period" and considered them in the context of

---

[5] A GAF rating of 41 to 50 indicates "serious" symptoms or "serious" difficulty in social or occupational functioning. (DSM-IV). Although plaintiff takes issue with the ALJ's failure to acknowledge lower scores ranging from 38-45, there is only a single score of 38 that falls below the "serious" range. Moreover, a failure to discuss every GAF score, or any for that matter, does not necessarily constitute error when the ALJ conducts a thorough analysis of the medical evidence regarding the claimant's mental impairments. See Ross v. Colvin, 2015 WL 4563258 (W.D.Pa., July 29, 2015)(J. McVerry). The ALJ clearly conducted a thorough analysis of all of the medical evidence here.

the various reports in which they were assigned, and weighed them in light of all of the medical evidence of record, including plaintiff's actual therapy records and mental status examinations, which indicated relatively stable symptoms. (R. 24). Thus, the ALJ's treatment of plaintiff's GAF scores in this case was proper and is supported by substantial evidence as outlined in her decision.

Plaintiff's final argument is that the ALJ misrepresented the record by stating that plaintiff's symptoms were "stable." To the contrary, plaintiff alleges that her symptoms were "wildly fluctuating" throughout the relevant time period and that she had "good days and bad days" which would preclude her from performing work on a regular and continuous basis. SSR 96-8p. She also contends that the ALJ should have requested a consultative examination or hired a medical expert to "clarify" the medical evidence.

In essence, plaintiff is asking this court to re-weigh the medical evidence and arrive at a different conclusion than the ALJ, which this court is not authorized to do. Fargnoli, 247 F.3d at 38. The record establishes that the ALJ properly analyzed the medical evidence under the appropriate standards[6] and that her findings and conclusions are supported by substantial evidence.

Plaintiff's contention that the ALJ improperly determined plaintiff's degree of functional limitation without consulting with a medical advisor also is without merit. As the

---

[6] The rules by which the ALJ is to evaluate the medical evidence are well-established under the Social Security Regulations and the law of this circuit. Opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(c) and 416.927(c).

court noted in Plummer, *supra*, an ALJ has a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of the impairment and its possible effects on the claimant's ability to work. 186 F.3d at 434. However, while the regulations *allow* the ALJ to seek the opinion of a medical expert, she is not required to. Id. at 433. Rather, the regulations allow the ALJ to remand for further review, to proceed with a determination without the assistance of a medical advisor, or to call a medical advisor for assistance. Id.; *see* 20 C.F.R. §§404.1520a(e)(5) and 416.920a(e)(5). In this regard the ALJ has more flexibility than initial hearing officers. Plummer, 186 F.3d at 433.

Moreover, the court finds no error in the ALJ's decision not to seek a consultative examination. The Regulations authorize the ALJ to obtain a consultative examination *if* the information needed to make a disability determination, "such as clinical findings, laboratory tests, a diagnosis or a prognosis" cannot be obtained from the claimant's medical sources. 20 C.F.R. §§404.1519a(a) & (b) and 416.919a(a) & (b). Before purchasing a consultative examination, the ALJ is to consider not only the existing medical reports but also the disability interview form containing the claimant's allegations as well as other pertinent evidence in the file. 20 C.F.R. §§404.1519a(a) and 416.919a(a). After consideration of the available evidence, the Regulations provide that a consultative examination *may* be purchased "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to support a decision on your claim." 20 C.F.R. §§404.1519a(b) and 416.919a(b). A decision whether to grant a consultative examination rests in the sound discretion of the ALJ. *See* Pryborowski v. Colvin, 2014 WL 3420351 (W.D.Pa., July 14, 2014)(J. McVerry)

Here, however, there was no inconsistency in the evidence and the evidence as a whole was sufficient to support the ALJ's rating of functional limitations without the need for a

consultative examination. The ALJ considered plaintiff's testimony and her mental health treatment records and reasonably evaluated plaintiff's mental functional limitations based on the evidence. The court is satisfied that the ALJ's rating of the degree of functional limitation arising from plaintiff's mental impairments is supported by substantial evidence. Pryborowski v. Colvin, 2014 WL 3420351 (W.D.Pa., July 14, 2014)(J. McVerry)(ALJ reasonably evaluated claimant's mental functional limitations and did not abuse discretion by not seeking consultative examination.)

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Colin Callahan
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219